## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Heidi Wallace, being first duly sworn, hereby state as follows:

### INTRODUCTION & BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the cellular telephone described in Attachment A (the "**target device**"), and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA), with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since August 2003. I graduated from the Special Agent Basic Training Program at the ATF National Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have conducted multiple investigations into the unlawful possession and use of firearms, the possession and distribution of controlled substances, and trafficking cases associated with firearm and narcotic offenses.

3. I have personal knowledge or have been provided by other law enforcement officers or witnesses with the facts set forth herein. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included every fact known to me concerning this investigation; rather I have set forth only the facts necessary to establish probable cause.

4. Based on the information set forth below, there is probable cause to believe that TYRUN WILLIAMS has violated 21 U.S.C. § 841(a), possession with

intent to distribute controlled substances, and 18 U.S.C. § 924(c), possession of a firearm in furtherance of drug trafficking. Furthermore, there is probable cause to believe that evidence of those crimes will be found in his cell phone, the **target device**.

PROBABLE CAUSE

5. On March 27, 2021, Lansing Township Police Department Officer Grundner conducted a traffic stop for speeding on a GMC Yukon. Officer Grundner made contact with the driver identified, as TYRUN DUNDRE WILLIAMS, Jr. As Officer Grundner informed WILLIAMS of the reason for the stop, he saw an assault-rifle style firearm on the front passenger side floorboard leaning against the center console. There was also a juvenile seated in the passenger seat, later determined to be WILLIAMS' daughter. Officer Grundner drew his service weapon and requested additional units. WILLIAMS told Ofc. Grundner that he had his CPL (Concealed Pistol License).[1] WILLIAMS provided the officer with his CPL and driver's license from his wallet that was in plain view.

6. WILLIAMS told the officer that he had just purchased the car for $40,000 cash days prior, but did not have paperwork for the car. WILLIAMS also stated that the firearm was in the vehicle because he was moving. Another unit arrived and noticed an open beer can sitting in the cup holder of the center console. Ofc. Grundner asked WILLIAMS to step out of the vehicle, WILLIAMS did not comply. The officer asked again. This time WILLIAMS moved a large bag of fast

---

[1] Regardless of the CPL, the firearm was in violation of Mich. Comp. Laws § 750.231a because it was not on WILLIAMS' person or in a "closed case designed for the storage of firearms."

2

food from his lap, exposing another gun that was on his lap. Officer Grundner instructed WILLIAMS to put his hands on the steering wheel, which he did. Officer Grundner secured the firearm from WILLIAMS' lap and detained WILLIAMS.

7.      Sgt. Ramsden and Ofc. Grundner asked WILLIAMS to perform field sobriety tests. WILLIAMS complied and the officers determined that he was under the influence of a controlled substance.

8.      Sgt. Ramsden conducted an inventory search of the vehicle before it was towed. The **target device,** a Grey/Silver Galaxy S10 cell phone with blue/black case, was located in inside the car. It was secured in evidence at the Lansing Township Police Department. Additionally, in the center console, Sgt. Ramsden located an additional handgun in a holster and two prescription bottles, one in the name Daniella L. Ferrell and the other had no label and contained three different pill types. Later these pills were identified as (38) Xanax, (1) Adderall XR and (1) Hydrocodone pill. On the driver's side of the vehicle, he located another holstered handgun tucked in a side pocket. At the rear of the vehicle, he located a gallon size bag of marijuana and three gun cases. One of the cases held another handgun. Sgt. Ramsden moved the dashboard display screen and located two black plastic containers that contained suspected powder cocaine in separate baggies, a large bag of suspected brown heroin, two baggies containing suspected crack cocaine and a baggie containing seven ecstasy pills. There were plastic baggies and a digital scale in the backseat. There was a total of approximately 134 grams of cocaine and 30 grams of heroin found in the car.

TruNarc was used to test the cocaine and heroin and both tested positive for the narcotics.

9. Officer Grundner read WILLIAMS his Miranda Rights and asked if he understood them. WILLIAMS advised he did and agreed to speak to the officer about the drugs located in his vehicle. WILLIAMS said a person named "Billy" used his car and that they belonged to him.

10. According to NICS background data, WILLIAMS has been denied five times in 2020 when attempting to purchase a firearm from various federally licensed dealers in the Lansing area. The last time he was denied was on October 1, 2020. WILLIAMS then was able to obtain a concealed pistol license (CPL) and License to Purchase (LTP) applications from the Ingham County Sheriff Office. These LTP's allow the subject to provide a licensed firearm dealer or private citizen with a form that allows them to purchase a firearm. After a firearm is purchased, they have 10 days to return the form to the issuing agency. WILLIAMS received five LTP's on March 12, 2021 from the Ingham County Sheriff Office and registered five guns in his name on March 14. Four out of the five guns were purchased by one female and only one of these guns were in the vehicle when it was stopped. That one gun that was seized by LTPD, the FN, model FN509 was purchased by a different female, but registered on March 14, 2021. In addition, it was discovered that the name on the prescription bottle (Daniella Ferrell) located in the vehicle was the original purchaser to the Glock, model 20, which was found also in the vehicle. That firearm was purchased by Daniella Ferrell on December 4, 2020 and registered in WILLIAMS'

4

name on December 20, 2020. Based on my training and experience in firearms trafficking cases, multiple firearms purchased by one individual that are found in possession of another individual after a short amount of time is indicative of firearms trafficking. Usually the person who bought the firearm was asked by the possessor to purchase the weapons on their behalf and some type of monetary or payment is given in exchange for the firearms. These messages are often transferred using cell phones of messaging apps located on cell phones. These messages could include information such as where to the buy the firearms, how much, where to meet afterwards for the exchange.

11. The quantity of drugs in the car, as well as the bags and scale, were indicative of trafficking. I know based on my training and experience that narcotics dealer and users commonly contact each other before deals occur. This type of contact is often conducted through phone calls, text messages or specific messaging apps located on cell phones.

## USE OF CELLULAR PHONES FOR CRIMINAL ACTIVITY

12. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range

of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; accessing and downloading information from the internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

13. I am aware that oftentimes during investigations of drug trafficking, investigators have located on the cellular phones of the perpetrators crime-related communications, both before, after, and during criminal episodes; observed individuals in possession of fruits of their criminal activities; and have even observed photographs or videos of the perpetrators committing crimes.

14. I know that it is common for individuals who commit crimes with others commonly use cellular telephones to store names, numbers and contact information of other subjects with whom they are involved in these types of crimes. Cellular telephones are used to communicate with accomplices and others with knowledge of the criminal activity. Cellular telephones are likely to reveal the prior contacts called, or messages/calls received from the contacts, the names and telephone numbers of contacts, messages to/from customers or accomplices, photographs of fruits of illegal activity, and photographs of those involved in any scheme. In this respect, cellular telephones are tools commonly used during criminal episodes, especially those episodes that involve multiple participants.

ELECTRONIC DEVICES AND STORAGE

15. I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **target device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **target device** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic

7

        devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## AUTHORIZATION REQUEST AND MANNER OF EXECUTION

17.   Delayed notice. I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result. Providing immediate notice

to the subscriber or user of the **target device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

18. Time of execution. I further request that the Court authorize execution of the warrant at any time of day or night, because the **target device** is within the custody of LTPD, and because the software used to extract data from the **target device** may need to run outside of daytime hours in order to facilitate speedy access to the phone's contents.

## CONCLUSION

19. Based on the evidence set forth in this affidavit, I believe that probable cause exists to search the **target device**, further described in Attachment A, to seek the information described in Attachment B.